1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11  EILEEN JOHANSSON-DOHRMANN,
    on behalf of herself, all other persons
12  similarly situated and the general public,

13                                    Plaintiff,
    vs.
14

15  CBR SYSTEMS, INC. and DOES 1
16  through 100,

17                                  Defendants.

CASE NO. 12-cv-1115-MMA (BGS)

**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD;**

[Doc. No. 29]

**JUDGMENT AND DISMISSAL**

18       On July 23, 2013, this matter came before the Court on Plaintiff's Motion for

19  Final Approval of Class Settlement, and Motion for Attorneys' Fees,

20  Reimbursement of Expenses, and Incentive Award [Doc. No. 29].  For the reasons

21  explained below, the Court **GRANTS** Plaintiff's motions in their entirety.

22                           **I. BACKGROUND**

23  **A.      Factual Background and Class Action Allegations**

24       Defendant Cbr Systems, Inc. ("Cbr") is licensed by the state of California to

25  store cord blood and tissues from mothers' umbilical cords.  When a customer

26  ("member") enrolls to obtain Cbr's services, the member is required to submit a

27  Medical and Health History Profile ("Profile") form.  The Profile forms are then

28  stored and maintained as part of Cbr's business records.  Class representative, Eileen

Johansson-Dohrmann, is a Cbr member.

On December 13, 2010, backup tapes and computer equipment containing unencrypted confidential member information were stolen from a Cbr employee's vehicle. This action followed. Plaintiff alleges in her First Amended Complaint ("FAC") that Cbr failed to adequately protect the medical and other private information of its clients; that Cbr's privacy policy misled its customers regarding the security of their confidential information; and that Cbr's notice to its customers was defective because Cbr unreasonably delayed sending the notification letter and because the letter was not sufficiently detailed.

In all, Plaintiff alleges seven causes of action: (1) violation of Confidentiality of Medical Information Act, Cal. Civil Code § 56 *et seq.*; (2) Invasion of Privacy–Constitutional; (3) Invasion of Privacy–Common Law; (4) Failure to Provide Reasonably Security Procedures with Respect to Personal Information about California Residents, Cal. Civil Code § 1798.81.5; (5) Breach of State Security Notification Laws, Cal. Civil Code § 1798.82; (6) Breach of Contract; and (7) Unlawful Business Practices, Cal. Bus. & Prof. Code § 17200, *et seq*.

**B.     Procedural Background**

Plaintiff originally filed suit in California state court on January 5, 2012; Cbr removed to this Court on May 7, 2012. After being granted an extension of time to file a responsive pleading, Cbr filed a motion to dismiss. Thereafter, on June 13, 2012, Plaintiff filed the FAC.

In early June 2012, the parties began settlement discussions. They enlisted the assistance of Justice Howard B. Wiener (Ret.) to mediate settlement discussions. During the first session with Justice Wiener, the parties reached an agreement regarding some terms of a potential settlement, but several issues remained unresolved (i.e., the details of the claims administration, class definition and the payment of attorneys' fees and/or any incentive award). After engaging in additional informal settlement discussions, the parties participated in a second

mediation session with Justice Wiener on August 6, 2012.  After this session, the parties came to an agreement and entered into a Memorandum of Understanding embodying the general terms of the settlement.  On November 8, 2012, the parties entered into the Settlement Agreement.  [*See* Doc. No. 18-3.]

On August 24, 2012, the Court granted a stay of all proceedings to facilitate the parties' completion of settlement efforts.  The parties moved for preliminary approval of class settlement on November 16, 2012, which the Court granted.  This matter is now before the Court for final approval of the settlement.  On July 23, 2013, the Court held a hearing on the pending motions.  Attorney Patrick N. Keegan appeared on behalf of the class.  Attorneys Joseph R. Tiffany and Connie Jean Wolfe appeared on behalf of Cbr.  No objectors appeared at the hearing.

**C.    The Settlement**

**1.    Settlement Class**

The settlement class is comprised of all former and current Cbr clients whose confidential individually identifiable medical information and/or financial information was contained on Cbr's computer equipment and computer backup tapes that were stolen on December 13, 2010.

There are approximately 292,000 class members.

**2.    Settlement Terms**

The settlement agreement provides that all class members may obtain, free of charge, a two-year subscription to a "Credit Monitoring Protection Package"("Credit Package") that provides for the following: (1) daily credit monitoring of three credit bureau reports; (2) provision of a credit report upon enrollment; (3) mobile and/or email credit alerts; (4) customer fraud resolution assistance; and (5) identity theft insurance protection of up to one million dollars for harm caused by identity theft. The Credit Package, provided by Experian, has a retail value of $15.95 per month. Cbr agrees that the total value of the Credit Package to the class is worth $111,751,187.00.

In addition, for class members who have incurred reasonable out-of-pocket expenses, Cbr has agreed to reimburse members for such expenses, subject to a cap of five hundred thousand dollars ($500,000) for all such expenses.[1]  Also, for class members who suffered from "Identify Theft,"[2] Cbr has agreed to reimburse such members up to fifty thousand dollars ($50,000) per Identity Theft incident, in the amount of the proven loss, for any loss that: (1) resulted from Identify Theft that is claimed and shown by the Claimant to have occurred more likely than not as a result of the Theft; (2) is an actual, documented and unreimbursed loss; and (3) occurred during the time period from December 13, 2010, through and including December 13, 2016.  The total aggregate amount of "Identify Theft" reimbursement is subject to a cap of two million dollars ($2,000,000).  The parties agree that, in combining the reimbursement funds with the Credit Package, the total settlement fund equals $114,251,187.

Cbr has also agreed to pay for reasonable costs of dispute resolution through arbitration under the auspices of JAMS for any disputed reimbursement claims that cannot be resolved through good faith discussions between the claimants and Cbr or the Settlement Administrator.  In addition, Cbr has agreed that the claimant may choose whether the arbitration is conducted in person in the claimant's hometown, over the telephone, or by ruling on the papers submitted.  Cbr will pay for the costs of dispute resolution (excluding attorneys' fees and expenses, if any) even if the claimant's claim is ultimately rejected by the arbitrator.  In addition, if the claimant

---

[1] Such expenses include: (i) reasonable costs of replacement checks necessitated by the opening of a new checking account or changing accounts; (ii) the cost of obtaining credit monitoring and identity theft insurance, if the purchase of such insurance occurred before the Credit Package becomes available, and provided such insurance is cancelled at the earliest opportunity thereafter, but in no event more than $20.00 per month, subject to reasonable documentation, and up to a total maximum of $200.00 per claimant; and (iii) reasonable costs of telephone calls, postage related to inquiries regarding a class member's bank accounts, financial accounts, mortgage accounts and/or credit reports, lost time (calculated at $10.00 per hour), the cost of placing a security freeze on a credit report, and/or the cost of changing a telephone number.

[2] Identity theft is the use of a class member's name, address, social security number, bank or credit card account number, or other identifying information without the class member's knowledge to commit fraud or any other crime.

is successful, he or she will receive an additional 10% of the face value amount of the award, plus attorneys' fees and costs if an attorney was retained.  The costs of dispute resolution will be paid in addition to the amounts designated for out-of-pocket expense or Identity Theft reimbursement.  Thus, the settlement terms are designed to ensure that Cbr and the Settlement Administrator will exercise sound discretion in addressing each claim and that claimants will have ample recourse through the most convenient mechanism possible, at no expense to them, if any claim is wrongfully denied.

Finally, Cbr has implemented new security measures providing for the encryption and backup of customer data using a tapeless technology that does not require transport of backup data offsite.  Additionally security measures have also been implemented.

The sole class representative, Eileen Johansson-Dohrmann will receive an enhancement award of $5,000.  Finally, class counsel (in a motion filed concurrently with the Final Approval motion) requests $585,936.33 in fees and $14,063.67 in costs.  Cbr has agreed not to object to this request.  These fees and costs will be awarded separately from the settlement funds.  Justice Wiener, who acted as the mediator for the class settlement negotiations, also helped negotiate the fee arrangement after the parties concluded their negotiations regarding substantive terms of the settlement.

## II. DISCUSSION

**A.     Motion for Final Approval of Class Settlement**

### 1.     Class Certification

A plaintiff seeking a Rule 23(b)(3) class certification must first satisfy the prerequisites of Rule 23(a).  Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3).  In the present case, the Court previously preliminarily certified the following class:

> All former and current CBR Systems, Inc. clients whose confidential individually identifiable medical information and/or financial

1  information was contained on CBR Systems, Inc.'s computer
2  equipment and computer backup tapes that were stolen on December
   13, 2010.

3  At that time, the Court concluded that the proposed class satisfied the numerosity,

4  commonality, typicality, and adequacy of representation requirements of Rule 23(a).

5  [*See* Doc. No. 23.]  The Court also found that the proposed class satisfied the

6  predominance and superiority requirements of Rule 23(b)(3).  Based on its previous

7  findings, the Court should certify the class for the purpose of settlement.  No party

8  or class member has objected to certification of the settlement class.

9          **2.      Final Approval of the Settlement**

10                 **a.      Legal Standard**

11         Voluntary conciliation and settlement are the preferred means of dispute

12  resolution in complex class action litigation.  *Officers for Justice v. Civil Service*

13  *Com'n of City and Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  And though,

14  "[u]nlike the settlement of most private civil actions, class actions may be settled

15  only with the approval of the district court," "the court's intrusion upon what is

16  otherwise a private consensual agreement negotiated between the parties to a lawsuit

17  must be limited."  *Id.* at 623, 625; *see also* Fed. R. Civ. P. 23(e).  Courts are not "to

18  reach any ultimate conclusions on the contested issues of fact and law which

19  underlie the merits of the dispute," nor is "[t]he proposed settlement [] to be judged

20  against a hypothetical or speculative measure of what might have been achieved by

21  the negotiators."  *Id.*  Rather, "a district court's only role in reviewing the substance

22  of [a] settlement is to ensure that it is 'fair, adequate, and free from collusion.'"

23  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citing *Hanlon v. Chrysler*

24  *Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

25         In making this appraisal, courts have "broad discretion" to consider a range of

26  factors such as "the strength of the plaintiffs' case; the risk, expense, complexity,

27  and likely duration of further litigation; the risk of maintaining class action status

28  throughout the trial; the amount offered in settlement; the extent of discovery

completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Id.* (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). "The relative importance to be attached to any factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

When (as here) the settlement takes place before formal class certification, settlement approval requires a "higher standard of fairness." *Lane*, 696 F.3d at 819. "The reason for more exacting review of class settlements reached before formal class certification is to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (quotations omitted).

### b.  Analysis

#### i.  Strengths and Risks of the Case

To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance against the continuing risks of litigation (including the strengths and weaknesses of the plaintiff's case), the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In other words,

> [t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush."

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted).

Here, while Plaintiff was confident that her claims have merit, she acknowledges the uncertainty of prevailing due to the defenses that could have been asserted by Cbr.  For example, Cbr was prepared to assert a defense to Plaintiff's

claim for $1,000 in statutory penalties under the Confidentiality of Medical

Information Act ("CMIA") by arguing that Cbr did not possess any "medical

information" so that there was no required "release" of medical information.  If

successful, the $1,000 statutory award would have been erased.  In light of this, it is

unclear what damages would have been available to the class, and if these damages

would have would have resulted in a more favorable victory for the class.  In his

declaration, Justice Wiener observed that, "the settlement is . . . fair and reasonable

to all parties and provides significant benefits to the Settlement Class."  [Wiener

Decl., Doc. No. 29-6, ¶ 3.]  In sum, in light of the uncertainty and extended

timeframe of litigation, the Court finds this factor weighs in favor approving the

settlement.

### ii.    The Settlement Amount

To assess whether the amount offered is fair, the Court may compare the

settlement amount to the parties' estimates of the maximum amount of damages

recoverable in a successful litigation.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at

459.  While settlement amounts that are close to the plaintiff's estimate of damages

provide strong support for approval of the settlement, settlement offers that

constitute only a fraction of the potential recovery do not preclude a court from

finding that the settlement offer is fair.  *Id.* (finding settlement amount constituting

one-sixth of the potential recovery was fair and adequate).  Thus, district courts have

found that settlements for substantially less than the plaintiff's claimed damages

were fair and reasonable, especially when taking into account the uncertainties

involved with litigation.  *See, e.g.*, *Williams v. Costco Wholesale Corp.*, 2010 U.S.

Dist. LEXIS 67731, at *9-*10 (S.D. Cal. July 7, 2010) (finding settlement amount

constituting approximately 75.6% of the plaintiffs' claimed losses from unpaid

overtime pay to be adequate); *Glass v. UBS Fin. Serv., Inc.*, 2007 U.S. Dist. LEXIS

8476, at *13 (N.D. Cal. Jan. 26, 2007) (finding settlement of wage and hour class

action for 25 to 35% of the claimed damages to be reasonable).

Here, Plaintiff alleges that class members were entitled to statutory penalties of $1,000, in addition to their actual damages under the CMIA.  When compared to the baseline $1,000 damages award, the Credit Package represents roughly 38% of this value.[3]  In addition to the Credit Package, Cbr also agrees to provide class members with a $500,000 fund for reimbursement of out-of-pocket expenses and a $2,000,000 fund for Identity Theft reimbursement.  Specifically, class members are able to make claims of up to $50,000 against the $2,000,000 fund for Identity Theft reimbursement up until December 13, 2016, and will be able to submit claims for reimbursement of out-of-pocket expenses up until 90 days after the effective date of the Final Judgment.  As of June 10, 2013, 53 class members had submitted reimbursement claims in the total amount of $109,164.89: Out-of-pocket expense claims totaling $29,712.28 and Identity Theft claims totaling $79,452.61.

The Court finds that while class members will not recoup the full $1,000 in alleged statutory damages, the Credit Package coupled with the reimbursement funds provides the class with real and substantial benefits.  This factor weighs in favor of settlement.

### iii.    The Stage of the Proceedings (Investigation, Discovery and Research Completed)

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quotation omitted).  Here, the parties engaged in both formal and informal discovery, including: (1) the deposition of the person who was Cbr's Vice President of Information and Chief Technology Officer at the time of the Theft; (2) the deposition of the Cbr employee whose vehicle was broken into during the Theft; (3) multiple requests for production of documents; (4) the review

---

[3] The value of two years of the Credit Package to each class member is $15.95 per month for 24 months, for a total of $382.80 ($15.95 x 24).

of thousands of pages of documents; and (5) the evaluation of Cbr's security procedures by an independent security advisor retained by Plaintiff's counsel. [Keegan Decl. ¶¶ 17-18.]   Justice Wiener notes, "It was clear from the briefs and the discussions during the mediation that the parties and their counsel had a thorough understanding of the facts and law as well as the risks and uncertainties pertaining to the litigation."  [Wiener Decl. ¶ 3.]

### iv.      Endorsement of Experienced Counsel

Class counsel has significant experience in class action litigation.  His support of the settlement should be accorded significant consideration.  *See, e.g.*, *Nat'l Rural Telcoms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.  This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation") (internal quotation marks and citations omitted).

Moreover, Justice Wiener attests that the parties "vigorously negotiated their respective positions," and that the settlement was the "product of arm's-length and good faith negotiations."  [Wiener Decl. ¶ 7.]

### v.      Reaction of the Class

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered.  *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976).  The absence of a large number objectors supports the fairness, reasonableness, and adequacy of the settlement.  *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class filed no opposition).

The reaction of the class has been almost entirely positive.  Of the nearly 287,000 class members noticed, 11,914 submitted claims and only 20 opted out as of June 10, 2013.  Moreover, only four class members objected (two of which are identical), which objections the Court overrules as meritless.  The small percentage of opt-outs and objectors strongly supports the fairness of the settlement.  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *see also Ko v. Natura Pet Prods.*, 2012 U.S. Dist. LEXIS 128615, at *15-*16 (N.D. Cal. Sept. 10, 2012); *Collado v. Toyota Motor Sales, U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 133572, at *6-*7 (C.D. Cal. Oct. 17, 2011); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667, at *33 (N.D. Cal. Apr. 1, 2011).  The Court will now address the concerns of each individual objector.

### 1.    Objections by Alan Gonzalez Cancel & Ivelisse Reyes [Doc. Nos. 25, 27]

Alan Gonzalez Cancel and Ivelisse Reyes submit identical objections.  They object to the proposed settlement because the agreement does not include an amount for their personal damages.  They state that the behavior of Cbr and the news that their personal information could be used to their detriment has given them emotional concern and anguish.  They "understand that [they] should be compensate[d] for [their] damages, as part of the settlement in an [amount not less than] $5,000.00."  Cancel and Reyes are unrepresented and did not attend the final approval hearing.

The Court finds that these objections are not well-taken.  To begin, objectors' purported emotional distress damages are uncorroborated and entirely speculative; based on the information they provide, it is doubtful they would have been entitled to such damages had they pursued their claim individually.  Also, personal injury damages (including emotional distress damages) are not being sought in this lawsuit.  [*See* FAC ¶ 18.]  Thus, Cancel and Reyes could not recover the damages they seek in this action.  Finally, the Ninth Circuit has cautioned that "settlement is the offspring of compromise; the question we address is not whether the final product

could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). If Cancel and Reyes believed that "[their] personal claim[s] w[ere] being sacrificed for the greater good . . . they had the right to opt-out of the class." *Id.* Objections seeking a "better" result, without more, are not sufficient to overturn a settlement agreement.

### 2.   Objection by Marycon De Rama and Gerry De Rama [Doc. No. 28]

Marycon De Rama and Gerry De Rama object because they "don't agree that only two years of credit monitoring and identify theft insurance [should] be offered. It's only fair that it'll (sic) be extended more than that, up to five years and there should be a lifetime guarantee that reimbursement will be given should an identity theft damage be discovered and proven that it (sic) stems from the stealing incident on Dec. 2010." [Doc. No. 28.] The De Rama's aver that "two years of identify protection are not enough compensation for an uncertainty that identify theft and damages may take place anytime in out lifetime to [the Theft]." [*Id.*] They did not appear at the final approval hearing.

While the Court acknowledges that identity theft may occur at any time, the Court finds that this objection also merely seeks a better result without consideration for whether the settlement is fair. As mentioned previously, if objectors believed that "[their] personal claim[s] w[ere] being sacrificed for the greater good . . . they had the right to opt-out of the class." *Hanlon*, 150 F.3d at 1027. But further, this objection fails to take into account the additional provisions of the settlement, namely that class members may submit claims for actual identity theft loss through and including December 16, 2016. Thus, while the Credit Package runs for two years (approximately July 2013 - June 2015), the Identity Theft reimbursement fund will be available for an additional year-and-a-half (approximately June 2015 - December 2016). Finally, the Court finds that a "lifetime guarantee" of

reimbursement is unreasonable.  Such an arrangement would place Cbr in perpetual uncertainty with respect to its liability and duty to pay out claims.  If objectors wished to pursue such a settlement with Cbr, they were free to do so on their own. However, their proposed settlement is not an option for a class of over 285,000 members.  Thus, the court overrules this objection.

### vi.    No Suggestion of Collusion

Finally, no aspect of the settlement suggests collusion.  Rather, it was reached after two days of mediation before the Honorable Howard B. Wiener (Ret.), and neither the requested attorneys' fees, nor the requested incentive award appear unreasonable.  Nor do any objectors suggest collusion.  In his declaration, Justice Wiener indicates that the parties "vigorously negotiated their respective positions." [Wiener Decl. ¶ 5.]  Further, he

> can categorically state the settlement reached between the parties was the product of arm's-length and good faith negotiations.  It is [his] opinion, based on [his] experience in participating in class actions, either as a mediator, Special Master or judge and the information [he] reviewed, the settlement is non-collusive, fair and reasonable to all parties and provides significant benefits to the Settlement Class.

[*Id.* ¶ 7.]

### 3.    Conclusion

Under the proposed settlement, the class receives immediate tangible benefits in the form of the Credit Package, and may further seek reimbursement of any actual loss.  In light of the uncertainty of litigation, the benefit to the class, and the overwhelming class support, the Court finds this settlement fair, adequate, and free of collusion.  Accordingly, the Court **GRANTS** the motion for final approval.

## B.    Motion for Award of Attorneys' Fees and Costs

Plaintiff seeks an award of attorneys' fees and costs in the amount of $600,000, which represents $585,936.33 in fees and $14,063.67 in costs.  After the parties concluded their negotiations regarding substantive terms of the settlement, the parties separately negotiated the fees and costs award with Justice Howard

1    Wiener's assistance.  Defendant agreed to pay these fees and costs in addition to the

2    class settlement.  No objector contests the fees and costs amounts.

3         **1.    Relevant Law**

4         Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a

5    certified class action, the court may award reasonable attorneys' fees and nontaxable

6    costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).

7    This action asserts California claims, and thus the Court applies California law to

8    determine both the right to and method for calculating fees.  *See Mangold v.*

9    *California Public Utilities Com'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).  Under

10   California law, the primary method for determining the amount of reasonable

11   attorneys' fees is the lodestar method, which multiplies the number of hours

12   reasonably expended by a reasonable hourly rate with the court increasing or

13   decreasing that amount by applying a positive or negative multiplier based on,

14   among other factors, the quality of representation, the novelty and complexity of the

15   issues, the results obtained, and the contingent risk presented.  *In re Consumer*

16   *Privacy Cases*, 175 Cal. App. 4th 545, 556-57 (2009).  But in cases such as this,

17   where the class benefit can be monetized with a reasonable degree of certainty, a

18   percentage of the benefit approach may be used.  *Id.* at 557-58 (citing *Lealao v.*

19   *Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26-27 (2000)).  California courts

20   use this percentage cross-check not only in conventional common fund cases but

21   also in cases in which, as here, the defendant creates a common fund for the benefit

22   of the class members and agrees to pay attorneys' fees separately.  *See Lealao*, 82

23   Cal. App. 4th at 35-37.

24        Under the percentage method, California has recognized that most fee awards

25   based on either a lodestar or percentage calculation are 33 percent and has endorsed

26   the federal benchmark of 25 percent.  *In re Consumer Privacy Cases*, 175 Cal. App.

27   4th at 556 n.13.  As to the settlement fund amount: "The total fund could be used to

28   measure whether the portion allocated to the class and to attorney fees is

reasonable." *Id.* at 553-54 (citations omitted).  Always, "[t]he ultimate goal is to award a reasonable fee."  *See Hartless v. Clorox*, 273 F.R.D. 630, 645 (S.D. Cal. 2011).  The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the burdens carried by class counsel; and (5) the awards made in similar cases.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

### 2.    Analysis

Here, the parties agree that the value of two years of the Credit Package to the class as a whole was worth $111,751,871.00.  In addition, Cbr also agreed to provide the class with a $500,000 fund for reimbursement of out-of-pocket expenses and a $2,000,000 fund for identity theft reimbursement.  Thus, the gross settlement fund equals $114,251,187.00.  Accordingly, the requested award of $585,936.33 in fees amounts to just 0.5% of the total amount of the gross settlement fund available to the class.  This is well within the 25% benchmark.  Further, consideration of the relevant factors outlined above militates in favor of the reasonableness of the fee.

#### a.    Result Achieved

As discussed above, Cbr agreed to provide each class member with two years of the Credit Package, a $500,000 fund for reimbursement of out-of-pocket expenses, and a $2,000,000 fund for Identity Theft reimbursement.  Plaintiff cites a number of privacy class action cases wherein courts have approved settlements giving less or even no direct compensation to class members.  [Memorandum in Support of Fee Application ("Fee Application") at 16, Doc. No. 29-3.]  In comparison, the result achieved here is considerably more beneficial.

#### b.    Risks of Litigation

Plaintiff asserts that "had this settlement not been achieved[,] Plaintiff and the Settlement Class faced a costly and risky trial against Cbr with ultimate success far from certain."  [Fee Application at 18.]  While establishing liability may have been

possible, it is unclear what damages would have been available for the class in the end.  This, coupled with the omnipresent risks of litigation, weighs in favor of the reasonableness of the fee.

### c.     The Skill Required, and the Quality and Efficiency of the Work

Plaintiff asserts that the settlement was possible only because class counsel was "able to convince Cbr, early on, that Plaintiff could potentially prevail on the difficult legal issues raised in Cbr's motion to dismiss, achieve class certification, overcome difficulties in proof as to monetary relief, and take the case to trial if need be." [Fee Application at 18.]  Plaintiff avers that class counsel's previous expertise in privacy litigation allowed for the successful prosecution of these complex claims.

With respect to the quality of work, Justice Wiener indicated that the parties' briefs submitted prior to mediation "thoughtfully and thoroughly discussed the legal issues and the merits of their respective positions."  Further, "[i]t was clear from the briefs and the discussions during the mediation that the parties and their counsel had a thorough understanding of the facts and law as well as the risks and uncertainties pertaining to the litigation."  [Wiener Decl. ¶ 3.]  Finally, the motions for preliminary and final approval were reasonably thorough and detailed.

### d.     Contingent Nature of the Case

Class counsel received no compensation during the course of this litigation, having been retained on a contingency fee basis.  Given the risks of the litigation, there was a viable chance that class counsel could have received nothing at all for their efforts.  Also, counsel argues that the award here (either 0.5% of the total value or 12.5% of the total benefits claimed) is much less than the average contingency fee award of 33%.  [Fee Application at 19.]   This weighs in favor of the reasonableness of the fee.

### 3.     Cross-Checking Reasonableness of the Fee with the Lodestar Approach

To be complete, the Court cross-checks this award using the lodestar approach. Under this method, the lodestar amount is calculated by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. *Hanlon*, 150 F.3d at 1029. The lodestar may include a risk multiplier to enhance the fees under certain circumstances, in which a court considers "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 1026. The customary range for multipliers is between 1.0 and 4.0. *See Vizcaino*, 290 F.3d at 1051 n.6 (describing appendix to opinion, finding a range of multipliers in common fund cases "of 0.6–19.6, with most (20 of 24, or 83%) from 1.0-4.0 and a bare majority (13 of 24, or 54%) in the 1 .5–3.0 range").

Here, counsel provided a declaration evidencing the hourly rate for their services and establishing the number of hours worked on the case. [*See* Keegan Decl. ¶¶ 49-55.] As the following table indicates, Keegan & Baker has spent 524.1 total hours working on the case.

| Name | Hours | Avg. Rate | Total Lodestar |
|------|-------|-----------|----------------|
| Patrick N. Keegan, Esq. | 338.75 | $695.00 | $235,431.25 |
| Jason E. Baker, Esq. | 11.00 | $375.00 | $4,125.00 |
| Brent Jex, Esq. | 9.50 | $325.00 | $3,087,50 |
| Lisa Magorien, Esq. | 164.85 | $245.00 | $40,388.25 |
| **Total** | **524.1** | **~$540.00** | **$283,031.50** |

The Court first considers whether the average hourly rate of approximately $540.00 is reasonable. A reasonable hourly rate is typically based upon the prevailing market rate in the community for "similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986); *see also Davis v. City of S.F.*, 976 F.2d 1536, 1545-46 (9th Cir. 1992) *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993). Counsel declares that this rate is lower than the prevailing market rates in California

for attorneys of comparable experience and skill.  Counsel fails to substantiate this assertion, but the Court finds the firms' average hourly rate of $540 to be a reasonable hourly rate for counsel of similar skill and experience in the San Diego legal market.[4]

Additionally, the Court finds that the firms' expenditure of 524.1 hours on the case is reasonable.  Although counsel has not provided the Court with detailed time sheets, such detailed time sheets are not necessary.  *See Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011)  ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.  And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation.")  Based on the foregoing, when multiplying the reasonable hourly rate by the number of hours, Plaintiffs' calculation of a $283,031.50 lodestar amount is both appropriate and "presumptively reasonable."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Cunningham v. Cnty. of L.A.*, 879 F.2d 481, 488 (9th Cir. 1988)).

Next, calculating the lodestar using the time expended in the litigation of this case, the requested attorneys' fee award of $585,936.33 yields a 2.07 multiplier of the lodestar.  In light of the factors mentioned previously, and the customary range for multipliers, the Court finds a multiplier of 2.07 reasonable.

Finally, class counsel seek reimbursement of their costs in the amount of $14,063.67.  Class counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case.  *See In re Media*

---

[4] *See Shames v. Hertz Corp.*, 2012 WL 5392159, at *18 (S.D. Cal. 2012) ("The *National Law Journal* data reveals that rates at six national defense firms with San Diego offices averaged between $550 and $747 per hour for partners and $346 and $508 per hour for associates.").

*Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)); *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003).  As with fees, reimbursement of costs here will be paid directly by Cbr and will not reduce the funds available to the Class.  The Court finds that class counsel's out-of-pocket costs were reasonably incurred in connection with the prosecution of this litigation, were advanced by class counsel for the benefit of the Class, and should be reimbursed in full in the amount requested.

### 4.     Conclusion

The Court **APPROVES** the award of attorneys' fees and costs in the amount of $600,000.

## C.     Class Representative Incentive Payment

### 1.     Relevant Law

In assessing the reasonableness of an incentive award, several district courts in the Ninth Circuit have applied the five-factor test set forth in *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995), which analyzes:  (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation.  *See, e.g.*, *Carter v. Anderson Merchs., LP*, 2010 U.S. Dist. LEXIS 55629 (C.D. Cal. May 11, 2010); *Williams v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 67731 (S.D. Cal. July 7, 2010).

### 2.     Analysis

The only Class Representative in this case is Plaintiff Eileen Johansson-Dohrmann.  No class member has objected to the proposed award of $5,000 to Ms. Johansson-Dohrmann.  Class counsel avers that "Ms. Johansson-Dohrman spent significant time and provided invaluable assistance to

counsel and the Settlement Class in this case." [Keegan Decl. ¶ 58.]   She "review[ed], for factual accuracy, all major pleadings filed with the Court, provid[ed] the factual background for the complaints filed in this Act, met[] with counsel on matters such as progress of the case and settlement, review[ed] documents," among other things.  [*Id.*]  The Court finds the $5,000 incentive award is within the acceptable range of approval and does not appear to be the result of collusion.  *See, e.g.*, *Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS 114597, *18 (N.D. Cal. Aug. 8, 2012) ("[T]he Settlement provides for an incentive award to the Plaintiff in the amount of $10,000.  In this District, a $5,000 incentive award is presumptively reasonable."); *Williams v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 67731, *19-*20 (S.D. Cal. July 7, 2010) (approving $5,000 award in an antitrust case settling for $440,000).

### 3. Conclusion

The Court **APPROVES** the $5,000 incentive award to Plaintiff Eileen Johansson-Dohrmann.

### III. CONCLUSION

The Court **OVERRULES** all objections to the class settlement and **GRANTS** Plaintiff's motions in their entirety, finding the proposed settlement of this class action appropriate for final approval pursuant to Federal Rule of Civil Procedure 23(e).  In doing so, the Court finds that the proposed settlement appears to be the product of non-collusive negotiations; that the settlement was entered into in good faith; that the settlement is fair, reasonable and adequate; and that Plaintiff has satisfied the standards for final approval of a class action settlement under federal law.  Furthermore, as set forth above, the Court finds the negotiated attorneys' fees, costs, and class representative incentive payment reasonable.

### JUDGMENT AND ORDER OF DISMISSAL

This Court **APPROVES** the settlement and **ORDERS** the parties to effectuate the settlement agreement according to its terms.

1    The Court **DISMISSES** this case on the merits and with prejudice, pursuant to

2    the terms of the parties' settlement agreement.

3    Upon the effective date, the Plaintiff, and each and every class member who

4    have not opted out of the settlement, and anyone claiming through or on behalf of

5    any of them, shall be deemed to have, and by operation of this Judgment shall have,

6    fully, finally, and forever waived, released, relinquished, discharged, and dismissed

7    each and every one of the released claims against each and every one of the Released

8    Parties.

9    If this Judgment and the settlement do not become final and effective in

10   accord with the terms of the settlement agreement, then this Judgment and all orders

11   entered in connection therewith shall be deemed null and void and shall be vacated.

12   The Court shall not retain continuing jurisdiction over implementation of the

13   settlement or future disputes over construing, enforcing, or administering the

14   settlement.

15   The Clerk of Court is instructed to terminate this case.

16   **IT IS SO ORDERED**.

17   DATED:  July 24, 2013

18   
19                                                Hon. Michael M. Anello
                                                 United States District Judge